IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CEDRIC JEFFRIES, | CASE NO. 1:22-CV-00047-BYP |
| Petitioner, | JUDGE BENITA Y. PEARSON |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN CHARMAIN BRACY, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

Representing himself, Petitioner Cedric Jeffries, a prisoner in state custody, filed a petition on January 10, 2022, seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction over the petition under § 2254(a). On January 13, 2022, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry of Jan. 13, 2022). On March 10, 2022, Respondent Warden Charmain Bracy (hereinafter, the State), as Warden of the Trumbull Correctional Institution, filed the Return of Writ, including the state court record and four volumes of trial transcript. (*See* ECF #5, 5-1, 5-2, 5-3, 5-4, and 5-5). Mr. Jeffries did not file a Traverse to the Return of Writ. This matter is now decisional.

For the reasons that follow, I recommend the District Court **DENY** any relief as to Ground One, **DENY** in part and **DISMISS** in part Ground Two, and **DENY** a certificate of appealability as to both grounds.

1

PROCEDURAL HISTORY

**A.      Factual findings of the Supreme Court of Ohio**

The factual findings of the Supreme Court of Ohio made on direct appeal are presumed correct unless Mr. Jeffries rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In its opinion upholding Mr. Jeffries's conviction, the Supreme Court of Ohio wrote as follows:

{¶ 3} D.S.'s mother lost custody of D.S. and two of D.S.'s half-siblings during the early years of the children's lives. The children then went into foster care. D.S. lived in three different foster homes before she was six years old. In 2006, when D.S. was six years old, H.G., Jeffries's mother, obtained custody of D.S. and her two half-siblings. Jeffries lived in the home with H.G. and the children. Jeffries is the biological father of one of D.S.'s half-siblings. Although D.S. was not Jeffries's biological child, he was a father figure to her. D.S. lived with H.G. and Jeffries until March 2016, when D.S. reported that Jeffries had repeatedly sexually abused her over the course of approximately nine years.

{¶ 4} The state decided to pursue four criminal charges against Jeffries related to two specific instances of sexual abuse. Pursuant to a grand-jury indictment, Jeffries was charged with kidnapping and raping D.S. when she was 12 years old and kidnapping and raping D.S. when she was 16 years old.

{¶ 5} During the discovery process, counsel for the defense and the state were permitted to review D.S.'s child-abuse-investigation records maintained by the Cuyahoga County Department of Children and Family Services. Those records revealed that when D.S. was four or five years old, she reported to the children-services agency that a foster brother had sexually assaulted her.

{¶ 6} On the first day of Jeffries's jury trial, prior to voir dire, defense counsel indicated that she did not plan on questioning D.S. about her prior allegation of sexual abuse and therefore would not need the court to conduct an in camera hearing pursuant to *State v. Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813 (1992), to determine whether such questions would be prohibited by the rape-shield law. Counsel apparently reconsidered soon after, and on the next day, after voir dire had begun, the trial court took a break from voir dire and conducted a *Boggs* hearing. At the hearing, D.S. testified that when she was four or five years old and living in a foster home, a foster brother living with her had touched her inappropriately and compelled her to engage in vaginal intercourse. She testified that she had been truthful when reporting the incident to the children-services agency. The trial court

2

concluded that the incident involved sexual activity and therefore it appeared it should be barred from admission into evidence by Ohio's rape-shield law.

{¶ 7} Defense counsel argued that although D.S.'s prior sexual assault involved sexual activity, the rape-shield law and *Boggs* did not prevent the admission of evidence about that assault, because the sexual activity was nonconsensual. The defense argued that the purpose of the rape-shield law is limited to protecting victims from being harassed about their consensual sexual history and therefore prior sexual assaults are outside the scope of protection. Defense counsel asserted that the evidence was necessary for the purpose of establishing D.S.'s "knowledge of the system" and for potentially rebutting any inference the jury might make that D.S.'s behavioral issues around age nine or ten were the result of sexual abuse by Jeffries.

{¶ 8} The trial court rejected the defense's argument and held that Ohio's rape-shield law and *Boggs* address all sexual activity, not only consensual sexual activity. Because the judge did not want to continue to make the prospective jurors wait to finish voir dire, she told counsel that she would explain her analysis in more detail later.

{¶ 9} The following day, after several witnesses had testified and the jury had been released for the day, the judge explained in more detail her rape-shield ruling. She stated that the plain language of the rape-shield law prevented the admission of the evidence, that she was satisfied from the evidence presented that D.S.'s allegation of abuse by her foster brother was true, and that the caselaw submitted by the defense was not controlling or persuasive.

{¶ 10} Defense counsel then asserted that the evidence of the prior assault should be admitted to explain H.G.'s testimony describing D.S.'s acting-out behavior. The judge noted that she had prohibited the state from implying that D.S.'s behavioral issues were connected with molestation, absent expert testimony to establish that connection. Also, the judge indicated that the evidence of the prior sexual assault was not particularly relevant given that there had been no evidence that D.S. had behavioral issues around age four or five and very little evidence that D.S. later acted out in a way that was abnormal for a preteen who had lived in multiple foster homes.

{¶ 11} During Jeffries's trial, the state presented evidence indicating that Jeffries had molested D.S. over the course of approximately nine years and that he had compelled D.S. to engage in vaginal intercourse on multiple occasions, including two specific incidents—one when D.S. was 12 years old and another when she was 16 years old. The jury found Jeffries guilty of all four counts. After merging certain counts for purposes of sentencing, the trial court imposed an aggregate prison sentence of 15 years to life and classified Jeffries as a Tier III sex offender.

{¶ 12} Among his arguments on appeal, Jeffries asserted that prior instances of nonconsensual sexual activity are outside the scope of the rape-shield law and are

therefore admissible. And because the sexual assault by D.S.'s foster brother was admissible, Jeffries argued, the trial court's exclusion of the evidence violated Jeffries's constitutional right to confront the witnesses against him. The appellate court rejected Jeffries's argument on the authority of *Boggs*. It noted that *Boggs* referred to "sexual activity" as including both nonconsensual and consensual sex and that *Boggs* held that evidence of "either type of activity" is barred from admission by the rape-shield law. The appellate court therefore affirmed the trial court's ruling on the applicability of the rape-shield law.

{¶ 13} We accepted one proposition of law for review:

> Ohio's rape shield law prohibition on the admission of "specific instances of the victim's sexual activity" applies only to consensual sex [and does not apply to] questions related to prior sexual abuse.

*State v. Jeffries*, 156 N.E.3d 859, 861-63 (Ohio 2020) (citations omitted), *cert. denied*, 141 S. Ct. 1085 (2021).[1]

## B.      Trial court proceedings

On May 20, 2016, a Cuyahoga County grand jury indicted Mr. Jeffries on the following offenses:

- Count One: Rape in violation of Ohio Revised Code § 2907.02(A)(1)(b), with an offense date of December 23, 2012.

- Count Two: Kidnapping in violation of Revised Code § 2905.01(A)(4), with an offense date of December 23, 2012. This count included a sexually motivated specification in violation of Revied Code § 2941.147(A).

- Count Three: Rape in violation of Revised Code § 2907.02(A)(2), with an offense date of March 1 to 31, 2016.

- Count Four: Kidnapping in violation of Revised Code § 2905.01(A)(4), with an offense date of March 1 to 31, 2016.

---

[1]      Although the state court record contains the Supreme Court of Ohio's judgment entry affirming the lower court's decision (ECF #5-1 at PageID 374), the opinion itself was not in the state court record.

(ECF #5 at PageID 61-63). Mr. Jeffries was arraigned on May 25, 2016, pled not guilty, and was appointed counsel. (*Id.* at PageID 65).

Trial began on November 28, 2016. (ECF #5-2 at PageID 495). Following the close of the State's case, the trial court denied Mr. Jeffries's Motion for Judgment of Acquittal under Ohio Criminal Rule 29. (ECF #5-1 at PageID 478). Mr. Jeffries renewed the motion after the close of the defense case, and the trial court again denied the motion. (*Id.*). The jury returned its verdict on December 6, 2016, finding Mr. Jeffries guilty of all four counts and the sexual motivation specification to Count Two. (*Id.* at PageID 67).

Mr. Jeffries appeared for sentencing on January 5, 2017. (*Id.* at 73). The trial court merged Count One into Count Two and Court Four into Count Three. (*Id.*). The trial court thus sentenced Mr. Jeffries based on Counts Two and Three, imposing a sentence of 15 years to life imprisonment as to Count Two and a concurrent mandatory sentence of 10 years of imprisonment on Count Three. (*Id.*). Mr. Jeffries was declared indigent and appellate counsel was appointed for him. (*Id.*).

## C.    Direct appeal

On January 17, 2017, through his new counsel, Mr. Jeffries filed a Notice of Appeal with the Ohio Court of Appeals, Eighth Appellate District. (*Id.* at PageID 77-78). His brief to the Eighth District asserted seven assignments of error, as follows:

> ASSIGNMENT OF ERROR 1
> The trial court erred and violated Appellant's right to confront and cross-examine witnesses under the Sixth Amendment to the United States Constitution when it failed to permit Appellant to introduce evidence of the minor victim's prior allegations of non-consensual sexual abuse.

ASSIGNMENT OF ERROR 2
The trial court erred and denied Appellant trial by a fair and impartial jury when it permitted Appellee to introduce testimony regarding prior allegations of sexual misconduct between Appellant and the minor victim which Appellant was never charged with or convicted of committing and additionally no limiting instruction was given to the jury.

ASSIGNMENT OF ERROR 3
The trial court erred when it failed to give a jury instruction regarding necessary sentencing factors under R.C. 2905.01(c)(3) for a kidnapping conviction that the victim was returned to a safe place unharmed in violation of Appellant's Sixth Amendment right to a jury trial regardless of the underlying sexual activity and where neither the indictment nor the bill of particulars identified rape as the underlying sexual activity.

ASSIGNMENT OF ERROR 4
Appellant was denied effective assistance of counsel when trial counsel failed to object to the questioning of witnesses regarding prior allegations of sexual misconduct between Appellant and the minor victim and when trial counsel failed to file an affidavit of indigency and move the trial court to waive costs.

ASSIGNMENT OF ERROR 5
The trial court erred in finding Appellant guilty of all charges where the evidence presented at trial was insufficient to overcome Appellant's Crim. R. 29 motion and to support a conviction for either offense.

ASSIGNMENT OF ERROR 6
The trial court erred in finding Appellant guilty of all charges as the manifest weight of the evidence did not support Appellant's convictions.

ASSIGNMENT OF ERROR 7
The trial court erred when it issued an order striking the testimony of Cedric Jeffries, Jr. that he did not witness Appellant and the minor victim together from the record and Appellant's trial counsel was ineffective for failing to object to the testimony being stricken.

(*Id.* at 93-94) (cleaned up). After the State filed its brief (*Id.* at PageID 135-63), on January 18, 2018, the Eighth District affirmed in part, reversed in part, and remanded the matter. (*Id.* at PageID 165-91). The court rejected Mr. Jeffries's first, second, third, fifth, sixth, and seventh assignments of error in their entirety. (*Id.*). But it upheld his fourth assignment of error in part,

concluding that Mr. Jeffries's trial counsel was deficient in not moving the trial court to waive the imposition of court costs based on Mr. Jeffries's indigency. (*Id.* at PageID 182). It thus remanded the matter "for a hearing regarding the imposition of court costs." (*Id.* at PageID 190).

On January 29, 2018, Mr. Jeffries moved the Eighth District to certify a conflict between its January 18, 2018 decision and that of the Ohio Court of Appeals, Seventh Appellate District, in *State v. Stoffer*, No. 09-CO-1, 2011 WL 4579182 (Ohio Ct. App. Sept. 30, 2011), and the Ohio Court of Appeals, Sixth Appellate District, in *State v. Sledge*, No. L-15-1109, 2016 WL 3654677 (Ohio Ct. App. July 8, 2016). (*Id.* at PageID 414-52). The State opposed Mr. Jeffries's request. (*Id.* at PageID 455-59). On March 26, 2018, the Eighth District granted in part and denied in part Mr. Jeffries's motion. (*Id.* at PageID 468). It found a conflict between its decision and *Stoffer*, but not with *Sledge*, and certified the following question to the Supreme Court of Ohio:

> Whether both prior consensual and nonconsensual sexual activity of the victim are protected by R.C. 2907.02(D), or whether it applies only to volitional sexual activity of the victim, and not to involuntary sexual activity, such as that suffered by a child victim of sexual abuse.

(*Id.* at PageID 468). On March 27, 2018, Mr. Jeffries filed his Notice of Certification of Conflict with the Supreme Court of Ohio. (*Id.* at PageID 470-72). And on May 23, 2018, the Supreme Court of Ohio determined that no conflict existed and dismissed Mr. Jeffries's appeal. (*Id.* at PageID 474).

Meanwhile, on March 5, 2018, Mr. Jeffries filed a Notice of Appeal to the Supreme Court of Ohio, seeking a discretionary appeal of the Eighth District's judgment. (*Id.* at PageID 193-94). Mr. Jeffries contended his case "raises a substantial constitutional question, and is one of public or great general interest." (*Id.* at PageID 194). His Memorandum in Support of Jurisdiction advanced three propositions of law, as follows:

*Propositions of Law I and II:*
Ohio's rape shield law prohibition on the admission of "specific instances of the victim's sexual activity" applies only to consensual sex or whether it also prohibits questions related to prior sexual abuse.

When the defense articulates a need for the admission of an alleged victim's prior nonconsensual sexual activity in order to attack the credibility of a particular aspect of the alleged victim's testimony, the blanket application of the rape shield law, R.C. 2907.02(D), violates due process under the Fourteenth Amendment to the United States Constitution and the right to confrontation of witnesses at trial under the Sixth Amendment to the United States Constitution.

*Proposition of Law III:*
A defendant receives constitutional ineffective assistance of counsel when his trial attorney fails to object to inadmissible, highly prejudicial other acts evidence, fails to seek a limiting instruction regarding such evidence, and fails to object to the striking of a witness' exculpatory testimony.

(*Id.* at PageID 197). The State's Memorandum in Response to Jurisdiction contended that Mr. Jeffries's case did not involve a substantial constitutional question or a matter of public or great general importance. (*Id.* at PageID 216).

On May 23, 2018, the Supreme Court of Ohio granted jurisdiction on Proposition of Law I only. (*Id.* at PageID 232). Subsequently, on April 22, 2020, the Supreme Court of Ohio affirmed the Eighth District's judgment. (*Id.* at PageID 374; *see also State v. Jeffries*, 156 N.E.3d 859 (Ohio 2020), *cert. denied*, 141 S. Ct. 1085 (2021)).

On September 21, 2020, Mr. Jeffries filed a Petition for Writ of Certiorari with the Supreme Court of the United States. (*Id.* at PageID 376, 378-93). In it, Mr. Jeffries presented a single question for review:

Does a State rape-shield law violate the Constitutional rights to confrontation and due process when it excludes evidence that a complaining witness had previously been the victim of a non-consensual sexual assault by a person other than the defendant, which evidence was necessary for the jury's evaluation of the complaining witness' testimony?

8

(*Id.* at PageID 379). The State opposed the petition. (*Id.* at PageID 395-410). On January 11, 2021, the Supreme Court of the United States denied the petition. (*Id.* at PageID 412).

### FEDERAL HABEAS PETITION

On January 10, 2022, Mr. Jeffries filed his habeas petition (ECF #1), raising two grounds for relief, as follows:

> **GROUND ONE**: I was denied due process because exculpatory evidence was excluded at trial because it violated Ohio's rape shield law. This violated my rights under the Sixth and Fourteenth Amendments.
>
> **Supporting Facts**: The alleged victim testified that she did not report being raped by me earlier because she did not think anyone would believe her and she would get in trouble. But when she was younger, she reported being sexually assaulted by a family member and was believed. The jury should have been able to hear my attorney cross-examine the alleged victim to understand that she was not being credible and also to understand how she would know about sexual actions. This was not allowed by the trial court.
>
> **GROUND TWO**: My attorney was ineffective in violation of my Sixth Amendment rights.
>
> **Supporting Facts**: My attorney failed to object to testimony that I sexually assaulted the alleged victim at times other than those charged in the indictment. My attorney also failed to ask for an instruction on a less severe offense that the kidnapping charges resulted in the alleged victim being released unharmed.

(*Id.* at PageID 5, 7). Mr. Jeffries's petition did not provide further analysis or explanation of the bases for habeas relief, and he did not file a Traverse to the State's Return of Writ. He requested relief in the form of a new trial. (*Id.* at PageID 15).

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Jeffries's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a

"formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For the purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state-court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the

10

precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*,
540 U.S. 12, 17 (2003) (per curiam).

A state-court decision involves an unreasonable application of the Supreme Court's
precedent if the state court identifies the correct governing legal rule from the Supreme Court's
cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either
unreasonably extends a legal principle from the Supreme Court's precedent to a new context
where it should not be applied or unreasonably refuses to extend that principle in a new context
where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state-court
decision unreasonably applied clearly established federal law is whether that state adjudication was
"objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek
v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief
does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*,
562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively
unreasonable in light of the evidence presented in state court. *Id.* at 100. The Supreme Court has
repeatedly emphasized "a state court factual determination is not unreasonable merely because the
federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under
AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct.
[Petitioner] shall have the burden of rebutting the presumption of correctness by clear and
convincing evidence." 28 U.S.C. § 2554(e)(1).

Comity principles also require federal courts to defer to a state's judgment on issues of
state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*,

456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

## PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. One such barrier is procedural default. Any claim not evaluated by the state courts on the merits because the claim was not properly presented is procedurally defaulted and thus is likely not cognizable on federal habeas review. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Absent a petitioner demonstrating either cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice (discussed

below), a federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

There are two avenues by which a petitioner's claim may be procedurally defaulted. *Williams*, 460 F.3d at 806. First, procedural default occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted when the petitioner fails to exhaust a claim by raising it in state court and pursuing it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806; *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("Boerckel's failure to present three of his federal claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims"); *Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. Although the exhaustion requirement is

satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims, barring federal court review. *Williams*, 460 F.3d at 806; *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) (holding a claim is procedurally defaulted on federal habeas review where a state prisoner has failed to first present a federal claim to the state court in accordance with state procedures and the state court would dismiss the claim on that basis).

In Ohio, the doctrine of res judicata bars review of issues that could have been raised on direct appeal but were not. *State v. Perry,* 226 N.E.2d 104, 108 (Ohio 1967). The Sixth Circuit has consistently held that Ohio's doctrine of res judicata is an adequate and independent state procedural ground on which to bar further review of a claim. *Monzo v. Edwards,* 281 F.3d 568, 577 (6th Cir. 2002); *see also Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (holding that "Ohio's doctrine of res judicata as a procedural bar is regularly applied by the Ohio courts"); *Mapes v. Coyle,* 171 F.3d 408, 421 (6th Cir. 1999) (rejecting argument that Ohio's doctrine of res judicata was not firmly established and regularly followed).

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Lundgren*, 440 F.3d at 764. A finding of cause and prejudice does not entitle a

petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 17 (2012).

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (noting such objective factors include "interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available."). Neither a petitioner's *pro se* status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Murray*, 477 U.S. at 494. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *See Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."

*See Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995) (noting a fundamental miscarriage of justice can occur where the petitioner shows it is more likely than not that no reasonable juror would vote to convict in light of newly presented evidence.). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

DISCUSSION

**A.      Ground One of Mr. Jeffries's petition addressing application of Ohio's Rape Shield Law does not warrant habeas relief from this Court.**

In Ground One of his petition, Mr. Jeffries re-advances his attack on Ohio's Rape Shield Law, Revised Code § 2907.02(D), that he previously made to the Eighth District, the Supreme Court of Ohio, and the Supreme Court of the United States. Here, he frames his argument in federal constitutional terms – that he was deprived of Sixth and Fourteenth Amendment rights when he was not allowed to cross-examine the minor victim D.S. regarding a sexual assault previously committed on her by her foster brother. (ECF #1 at PageID 5). This was an issue the Supreme Court of Ohio declined to address:

> We note that within Jeffries's preservation-of-constitutionality argument, he asserts that the rape-shield law is unconstitutional as applied to defendants whose constitutional rights to due process and to confront witnesses are impaired by the inability to provide relevant, probative evidence about an accuser's nonconsensual-sexual-activity history. This argument was contained in Jeffries's second proposition of law, and we did not accept jurisdiction over that proposition of law. Our decision

16

today is limited to a determination of the meaning of the terms of the rape-shield
law. We leave for another day the issue whether prohibiting the admission of
evidence of an accuser's history of nonconsensual sexual activity under the rape-
shield law might be unconstitutional as applied in certain cases.

*Jeffries*, 156 N.E.3d at 866.

The Eighth District, however, did address Mr. Jeffries's argument concerning his right to

confront his accuser, concluding this claim was without merit:

### A. Evidence of Victim's Prior Allegations of Nonconsensual Sexual Abuse Precluded From Trial

{¶ 15} Prior to trial, the trial court held an in camera hearing pursuant to *State v.
Boggs* to determine the admissibility at trial of evidence regarding D.S.'s prior
allegations of sexual misconduct against a foster brother. At the hearing, D.S.
testified that when she was in a foster home at age four or five, one of her foster
brothers sexually abused her, including putting his penis in her vagina. She said that
the activity was not consensual, and that she honestly disclosed the abuse to a
CCDCFS social worker. The trial court then denied Jeffries's request to allow
defense counsel to ask questions of D.S. regarding these prior allegations of sexual
abuse by the foster brother, concluding that cross-examination on this issue was
precluded by Ohio's rape shield statute. In his first assignment of error, Jeffries
contends that the trial court erred in denying his request because it violated his Sixth
Amendment right to confront the witnesses against him.

{¶ 16} R.C. 2907.02(D), Ohio's rape shield statute, states, in relevant part, that:

> Evidence of specific instances of the victim's sexual activity, opinion
> evidence of the victim's sexual activity, and reputation evidence of the
> victim's sexual activity shall not be admitted under this section unless
> it involves evidence of the origin of semen, pregnancy, or disease, or
> the victim's past sexual activity with the offender, and only to the
> extent that the court finds that the evidence is material to a fact at
> issue in the case and that its inflammatory or prejudicial nature does
> not outweigh its probative value.

{¶ 17} Jeffries cites to *State v. Stoffer*, in which the Seventh District found that the
rape shield statute address only prior *consensual* sexual activity of the victim and not
prior sexual abuse suffered by the victim. Thus, in *Stoffer*, although it ultimately
found the error to be harmless, the Seventh District held that the trial court erred in
applying the rape shield statute to preclude the defendant from introducing evidence
that the victim had previously been sexually abused by someone other than the

defendant. In *State v. Sledge*, the Sixth District, citing *Stoffer*, found that where alleged prior sexual abuse of the victim does not result from "volitional sexual acts * * * it may not fall within the general prohibition mandated by R.C. 2907.02(D)." In reliance on *Stoffer* and *Sledge*, Jeffries asserts that the rape shield statute did not preclude his cross-examination of D.S. regarding her prior allegations of sexual abuse against a foster brother. We disagree because the Ohio Supreme Court has made it clear that both prior nonconsensual and consensual sexual activity of the victim are protected by the rape shield statute.

{¶ 18} In *Boggs*, supra, the Ohio Supreme Court considered whether the rape shield statute prohibits a defendant from cross-examining an alleged rape victim about prior false rape allegations. The court held that before cross-examination of a rape victim regarding prior false rape accusations may proceed, "the trial judge shall hold an in camera hearing to ascertain whether such testimony involves sexual activity and thus is inadmissible under R.C. 2907.02(D), or is totally unfounded and admissible for impeachment of the victim."

{¶ 19} The Supreme Court also held that the burden is on the defendant to demonstrate that the accusations were false. The court stated:

> the initial inquiry must be whether the accusations were actually made by the prosecutrix. Moreover, the trial court must also be satisfied that the prior allegations of sexual misconduct were actually false or fabricated. That is, the trial court must ascertain whether *any sexual activity took place, i.e., an actual rape or consensual sex. If it is established that either type of activity took place, the rape shield statute prohibits any further inquiry into this area.* Only if it is determined that the prior accusations were false because no sexual activity took place would the rape shield law not bar further cross-examination.

(Emphasis added.) In short, if any type of sexual activity occurred and the allegation was not false, the victim is protected by the rape shield statute, and the defendant may not question the victim about the prior sexual activity.

{¶ 20} Here, the trial court conducted an in camera hearing at which it learned that the incident involving D.S.'s foster brother had occurred one or two years before she moved in with H.G. and Jeffries. D.S. never wavered from her claims that the incident occurred, and that she honestly reported it to CCDCFS. After hearing from D.C., the trial court decided that the incident was protected by the rape shield statute because it involved sexual activity, and there was no evidence whatsoever that the allegation was false. On this record and in light of *Boggs*, we find no abuse of discretion in the trial court's ruling. The first assignment of error is therefore overruled.

*Jeffries*, 104 N.E.3d at 904-06 (citations omitted).

Nothing in the Eighth District's analysis of the constitutional aspects of Mr. Jeffries's attack on Ohio's Rape Shield law results in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Nor has Mr. Jeffries established that the Eighth District's decision was based on an unreasonable determination of the facts given the evidence presented in the state-court proceedings.

Some 12 years ago, the Sixth Circuit observed: "The United States Supreme Court has never held that rape-shield statutes do not represent a legitimate state interest, nor has it ever held that highly probative evidence will necessarily outweigh that interest." *Gagne v. Booker*, 680 F.3d 493, 516 (6th Cir. 2012) (en banc). Such interests include guarding the victim's sexual privacy; protecting the victim from undue harassment; aiding crime prevention by encouraging the reporting of sex-based offenses; and excluding evidence that is unduly inflammatory and prejudicial. *Webster v. Warden, Belmont Corr. Inst.*, No. 1:15-cv-329, 2024 WL 691348, at *35 (S.D. Ohio Feb. 20, 2024) (citing *State v. Gardner*, 391 N.E.2d 337, 340 (Ohio 1979)). Courts have also recognized that rape-shield laws such as Ohio's are consistent with the balancing necessary to ensure a defendant has an opportunity to exercise the constitutional right to confront one's accuser without allowing generalized attacks on the credibility of a witness. *See Webster*, 2024 WL 691348, at *34. Likewise, courts have recognized that a rape-shield law does not violate the defendant's constitutional right to present a complete defense. *Id.* at *35.

To determine if a rape-shield law results in a constitutional violation, the "trial court must balance the state's interest against the defendant's interest on a case-by-case basis." *Gagne*, 680 F.3d

at 516 (citing *Michigan v. Lucas*, 500 U.S. 145, 152-53 (1991)). "So long as the trial judge

reasonably concludes that the State's interest in exclusion outweighs the defendant's need for the

evidence, the Constitution permits the rape shield to do its intended work." *Batey v. Haas*, 573

F. App'x 590, 594 (6th Cir. 2014); *see also Gagne*, 680 F.3d at 517 (noting that the pertinent

inquiry under AEDPA is not whether the trial judge was correct, but whether the last state court's

decision was objectively unreasonable). Here, the trial court conducted that inquiry and concluded

the proposed testimony was inadmissible. (*See* ECF #5-2 at PageID 526-27; *see also Jeffries*,

104 N.E.3d at 904-05). Further, the Eighth District reviewed that decision and upheld the trial

court's ruling. *Jeffries*, 104 N.E.3d at 906. Mr. Jeffries has not demonstrated anything about these

determinations meets the standards necessary to warrant habeas relief.

For these reasons, I recommend the District Court **DENY** any relief based on Ground

One.

> **B.** **Ground Two of Mr. Jeffries's petition alleging ineffective assistance of trial counsel raises claims that are either without merit or procedurally defaulted, and thus no relief is warranted.**

In Ground Two of his petition, Mr. Jeffries maintains he did not receive effective assistance

of counsel at trial. He particularly claims his trial counsel erred by (1) not objecting to testimony

that Mr. Jeffries sexually assaulted the alleged victim on dates other than those charged in the

indictment, and (2) not asking for an instruction on a less severe offense. (ECF #1 at PageID 7).

The State responds that on its merits, the first argument fails, and the second is procedurally

defaulted. (ECF #5 at PageID 51). As explained below, I agree with the State on both issues. But

before turning to the specifics of each argument, I note that Mr. Jeffries advanced both arguments

before the Eighth District, which found no merit to either:

20

### D. Ineffective Assistance of Counsel

{¶ 37} Jeffries next argues that his counsel was ineffective for not (1) objecting to the admission of other acts evidence; [and] (2) objecting to the lack of a "released in a safe place unharmed" jury instruction . . . .

{¶ 38} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. Prejudice is established when the defendant demonstrates "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

{¶ 39} Having found no error in the admission of other acts evidence, we find no ineffective assistance in counsel's failure to object to this evidence. Likewise, having found no error in the trial court's failure to give a "released in a safe place unharmed" jury instruction regarding kidnapping, we find no ineffective assistance in counsel's failure to object to the lack of such an instruction.

*Jeffries*, 104 N.E.3d at 909 (citations omitted).

### 1. Mr. Jeffries's argument regarding his trial counsel's failure to object to other acts evidence is without merit.

The Sixth and Fourteenth Amendments guarantee criminal defendants the right to "reasonably effective assistance" of counsel. *Strickland*, 466 U.S. at 687. To establish that counsel's representation was constitutionally ineffective, a habeas petitioner must show counsel's representation fell below an objective standard of reasonableness based on all the circumstances in the case, such that he or she did not function as "counsel" guaranteed by the Sixth Amendment, and counsel's deficient performance prejudiced the defense. *Id.* at 687-88.

To satisfy the deficiency prong, the habeas petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 668. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved

unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). This is an extremely deferential standard, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. In particular, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-91. Moreover, this inquiry requires eliminating "the distorting effects of hindsight . . . [in order] to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather "to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id.* at 687.

To satisfy the prejudice requirement of *Strickland*, the habeas petitioner must show "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome." *Id.* at 694.

Failure to satisfy either requirement is fatal to an ineffective-assistance-of-counsel claim. *Id.* at 697. And although the habeas petitioner must prove each element of the two-part *Strickland* test to establish an ineffective-assistance-of-counsel claim, courts are not required to conduct an analysis under both prongs. *Id.* at 697.

Mr. Jeffries contends his counsel was ineffective in not objecting to testimony at trial that Mr. Jeffries sexually assaulted the victim on dates other than those charged in Counts One and Three. (ECF #1 at PageID 7). The Supreme Court of Ohio did not address this issue during Mr. Jeffries's direct appeal, but the Eighth District did, writing as follows:

> {¶ 21} In his second assignment of error, Jeffries contends that the trial court erred by admitting evidence of his prior bad acts; specifically, in allowing D.S. to testify about prior instances of sexual abuse against her other than the two incidents for which he was indicted. Jeffries contends this evidence was "classic bad-man evidence" that was unrelated to the two incidents for which he was indicted and allowed the jury to convict him on the charged offenses merely because it assumed that he acted in conformity with his bad character.

> {¶ 22} Defense counsel did not object to the admission of this evidence at trial and therefore has waived all but plain error on appeal. Plain error exists where, but for the error, the outcome of the trial clearly would have been different. Appellate courts find plain error only in exceptional cases where it is necessary to prevent a manifest miscarriage of justice.

> {¶ 23} "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose it to show the accused's propensity or inclination to commit crime, or that he acted in conformity with bad character." However, there are exceptions that allow other acts of wrongdoing to be admitted.

> {¶ 24} First, R.C. 2945.59 provides that:

>> [i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

> {¶ 25} Also, Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts is permitted to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident.

23

{¶ 26} In deciding whether to admit other acts evidence, trial courts should conduct a three-step analysis:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.

{¶ 27} Applying this test to the challenged testimony, we find no abuse of discretion by the trial court in admitting the evidence. First, the other acts evidence was relevant because it tended to show Jeffries's plan for grooming D.S. for sexual activity. "'Shaping and grooming describes the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point of intercourse.'" D.S.'s testimony established that the grooming started at six years of age when Jeffries held her and touched her buttocks; progressed through the years to Jeffries having her take her clothes off and sit naked on his lap; escalated to Jeffries touching her breasts and vagina; and finally, culminated in incidents when Jeffries would insert his penis in D.S.'s vagina.

{¶ 28} Next, the testimony was elicited for a legitimate purpose under Evid.R. 404(B), which provides that other acts evidence may be admitted to show motive, intent, plan, scheme and absence of mistake. D.S.'s testimony was relevant to Jeffries's plan and scheme to groom her over the years from touching to sexual intercourse.

{¶ 29} And the probative value of the evidence was not outweighed by the danger of unfair prejudice. Rather than inflaming the jury and appealing only to its emotions (the general test for unfairly prejudicial evidence), the evidence of Jeffries's grooming of D.S. provided a basis for the jury to recognize his ongoing scheme for sexual activity with D.S. And although the trial court did not give a limiting instruction regarding the other acts evidence, D.S. was subject to cross-examination, and defense counsel challenged her credibility and testimony regarding Jeffries's sexual motives and actions. Likewise, Jeffries testified in his own defense that D.S. was lying. The jury was free to judge the credibility of the witnesses.

{¶ 30} Finally, Jeffries did not request that the trial court give a limiting instruction regarding the other acts evidence. His failure to do so waives all but plain error. Where the defense fails to request a limiting instruction on other acts evidence, the trial court's failure to give such an instruction is not plain error where nothing

suggests the jury used other acts evidence to convict the defendant because he was a bad person. Jeffries points to nothing that suggests the jury did so. Accordingly, we find no plain error in the trial court's failure to give a limiting instruction and in admitting the other acts evidence.

*Jeffries*, 104 N.E.3d at 906-08 (citations omitted).

A habeas petitioner's claim of ineffective assistance of counsel is difficult to establish in an action under § 2254 when the state courts have rejected the merits of that claim:

> As previously discussed . . . an ineffective-assistance-of-counsel claim is governed by the test articulated in *Strickland,* where "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." By itself, this is a deferential standard that is challenging for a claimant to meet. Where the claimant is a state habeas petitioner whose claims are subject to AEDPA, that standard is raised even higher, as the petitioner must show that the state court's application of *Strickland* was itself unreasonable. This amounts to a "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." Stated differently, AEDPA requires us to "take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)."

*Kelly v. Lazaroff*, 846 F.3d 819, 831-32 (6th Cir. 2017). Having considered Mr. Jeffries's claim of ineffective assistance of trial counsel by reference to these standards, I conclude no relief is warranted on this claim. In particular, because Mr. Jeffries both submitted his petition without any supporting memorandum and did not file a Traverse to the Return of Writ, he has provided no explanation of how he meets the deficiency and prejudice prongs of *Strickland* or why the Eighth District's analysis quoted above unreasonably applied *Strickland*. Further, my independent review of the record fails to disclose any error by the Eighth District on this issue.

Accordingly, I recommend the District Court **DENY** any relief on the first portion of Ground Two.

2. **Mr. Jeffries's argument regarding the jury instruction his trial counsel did not request is procedurally defaulted.**

Mr. Jeffries also argues his trial counsel was ineffective by not asking for an instruction on a less severe offense. (ECF #1 at PageID 7). Again, the lack of a supporting memorandum or Traverse means this argument is essentially unexplained before this Court. But Mr. Jeffries advanced a similar argument, unsuccessfully, before the Eighth District:

{¶ 32} Under R.C. 2905.01(C)(3)(a), if the victim of a kidnapping was under 13 years of age and the offender is also convicted of a sexual motivation specification, as Jeffries was, kidnapping is a felony of the first degree, and the offender shall be sentenced to an indefinite term of 15 years to life in prison. If, however, the victim was released in a safe place unharmed, the offender shall be sentenced to an indefinite term of 10 years to life in prison.

{¶ 33} In his third assignment of error, Jeffries contends that he was deprived of his Sixth Amendment right to trial by jury because the trial court did not instruct the jury with respect to Count 2 that it should make a determination as to whether D.S. was released in a safe place unharmed. He argues that the "released in a safe place unharmed" provision of R.C. 2905.01(C)(3)(a) is a factual sentencing determination that the finder of fact is required to make because it controls which of the two sentencing terms the trial court is required to impose. He asserts that the trial court therefore erred in not instructing the jury to make this determination. Jeffries did not request such a jury instruction, however, and has waived all but plain error, which we do not find.

{¶ 34} This court considered and rejected a similar argument in *State v. Bolton*. In *Bolton*, the defendant argued that he was denied due process because the trial court did not instruct the jury to determine whether the victim was released in a safe place unharmed, a factor that would have reduced the kidnapping offense in that case from a felony of the first degree to a second-degree felony. We found that the "released in a safe place unharmed" provision of R.C. 2905.01(C) is not an element of the offense of kidnapping; instead the defendant "must plead and prove that assertion as an affirmative defense."

{¶ 35} We also found that "'the court has no duty to give jury instructions that are neither supported by the facts nor that assist the jury.'" Because the appellant had failed to provide any evidence that the victim was released unharmed, we held that the trial court did not err by not giving a jury instruction on the "released in a safe place unharmed" issue.

26

{¶ 36} In this case, as in *Bolton*, Jeffries never argued that D.S. was released unharmed nor did he provide any evidence that she was released unharmed. Instead, ample evidence provided by the state demonstrated that D.S. was indeed harmed—she was raped by Jeffries before she was released. Further, she was referred for psychological counseling after the abuse was discovered. As this court stated in *Bolton*, "'it is difficult indeed to imagine that one may engage in sexual activity with another against their will and still argue that such a person is left 'unharmed.'" Because there was no evidence that D.S. was released unharmed, the trial court did not err in not instructing the jury on this issue. The third assignment of error is overruled.

*Jeffries*, 104 N.E.3d at 908-09 (citations and footnote omitted).

Having advanced this argument before the Eighth District, Mr. Jeffries did not include it as an argument in his Memorandum in Support of Jurisdiction to the Supreme Court of Ohio. In so doing, he has procedurally defaulted this argument. *See Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2009). Mr. Jeffries's petition does not argue cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice; therefore, the procedural default is not excused.

For these reasons, I recommend the District Court **DISMISS** the second portion of Ground Two of Mr. Jeffries's petition.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*,

529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether (1) the petition states a valid claim of the denial of a constitutional right and (2) the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Jeffries has made no substantial showing of the denial of any constitutional right. Jurists of reason would not find it debatable whether either of his grounds for relief are valid claims of the denial of constitutional rights. Therefore, I recommend the District Court **DENY** Mr. Jeffries a COA.

### Conclusion and Recommendation

For the reasons set forth above, I recommend the District Court **DENY** any relief as to Ground One, **DENY** in part and **DISMISS** in part Ground Two, and **DENY** a certificate of appealability as to both grounds.

Dated: June 6, 2024

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).